UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| V. ) | CAUSE NO. 1:23-cr-00055-TWP-MJD |
| ) | |
| BILLIE DAVIS, ) | |
| ) | |
| Defendant. ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through the undersigned counsel, respectfully submits this Sentencing Memorandum in support of a sentence of 72 months of imprisonment and three years of post-release supervision.

**I.   Background**

On January 11, 2023, Z.F. was riding a Bloomington Transit bus, in Bloomington, Indiana, which is located in Monroe County, in the Southern District of Indiana. Z.F. was at the time an 18-year-old woman of Chinese descent who attended school at Indiana University in Bloomington and is enrolled in the College Internship Program.

Z.F. was seated directly in front of the rear exit door of the bus. The defendant, Billie Davis, entered the bus and sat directly behind the rear exit door of the bus. A few moments later Z.F., pulled the chord on the bus to indicate that she wanted to stop at the next exit. The defendant removed a folding knife from her right front pocket and opened the blade. As Z.F. stood to exit the bus from of the rear exit, the defendant placed the knife in her right hand and turned towards Z.F. The defendant then stabbed Z.F. in the head approximately seven to ten times. Z.F. exited the bus and paused on the sidewalk, bent over, and screamed in pain from the stab wounds. The defendant collapsed the knife, put it back in her pocket, and sat back down. Moments later the defendant then exited the bus after a

passenger told the bus driver that she just attacked Z.F.

After the assault, the defendant got off the bus and started running away. A bus passenger, R.C., also exited the bus and followed the defendant, while calling 911. As R.C. trailed the defendant, she saw the defendant holding a knife with an orange handle.

R.C. followed the defendant as she headed towards a nearby walking trail, with the intention of watching her until the police arrived. On the advice of the 911 operator, R.C. kept her distance, but was still close enough to engage the defendant in a conversation. R.C heard the defendant talk about and threaten Chinese people and believed that the defendant acted like "a blatant racist." R.C was unable to understand everything the defendant said because the defendant mumbled when she spoke, but the defendant was lucid and able to hold her end of the conversation with her. R.C. asked if the defendant believed the girl was an agent of the Chinese government – the defendant responded yes and called R.C. a "chink lover." The defendant told R.C. that the female she attacked was going to blow up the bus because she was Asian. The defendant also said that she does not trust the Chinese government because they were dangerous. When the police arrived, the defendant was seated on a bench, with R.C. standing at a distance. The officers searched the area and were not able to find defendant's knife.

The defendant made several statements expressing her racial animus as her motivation for the assault. Once arrested, the defendant told the police that she "snapped a minute ago, I hit some girl." The defendant described Z.F. as "some Asian f*cking c*nt." During a *Mirandized* statement to the police, the defendant stated when she sat down on the bus, she noticed that Z.F. was Chinese. The defendant stabbed Z.F. because she was of Chinese descent and so that there was "one less enemy."

Z.F. sustained multiple stab wounds on her head which included a posterior hematoma; two one-centimeter cuts; and a deeper 1.75 centimeter cut that required sutures and staples. Z.F. continues to suffer from severe fear and anxiety from the assault, and only recently was able to begin riding

public transportation again.[1]

## II. Procedural History

On April 23, 2023, a grand jury returned an Indictment charging the defendant with a single count of violation the Hate Crimes Act, 18 U.S.C. § 249(a)(1). Specifically, the defendant was charged with willfully causing bodily injury to Z.F. or attempted to do so through the use of a dangerous weapon, namely, a knife, because of Z.F.'s actual and perceived race and national origin and included an attempt to kill (ECF No. 1).

The defendant filed a motion to determine her mental competency, which the Court granted. (ECF No. 30 & 31). The Court held a competency hearing on January 31, 2024, during which Dr. Lesli Johnson, Ph.D. testified to her findings from her examination of the defendant, and the Court found the defendant competent to proceed (ECF No. 46 & 48). On April 4, 2024, the defendant filed notice of her intent to assert an insanity defense, and on May 6, 2024, the Court, at the request by the government, ordered the defendant to undergo a psychiatric exam (ECF No. 58 & 72).

The parties thereafter entered into a Plea Agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(c) (ECF No. 97). The defendant would plead guilty to the lesser included offence charged in the Indictment, that defendant willfully caused bodily injury to Z.F. or attempted to do so with a dangerous weapon and acted because of the actual or perceived race or national origin of Z.F. The parties agreed that the only provisions of the Plea Agreement subject to the provisions of Fed. R. Crim. P. 1l(c)(l)(C) are a custodial sentence of not to exceed 72 months' imprisonment and whether the Court should impose a term of supervised release to follow any term of imprisonment in this case, the duration of any term of supervised release, and the terms
and conditions of the release. (*Id*.)

## III. Sentencing Considerations

The government maintains that given the nature of the crime and the negotiated terms of the

---

[1] The government refers the Court to its manual filing for a copy of the video footage and for the defendant's recorded statement.

prison sentence, a sentence of 72 months of imprisonment followed by three years of supervised release is an appropriate sentence in this case. In reaching its decision, the Court is called upon to consider both the advisory sentencing guidelines and the statutory sentencing factors enumerated in 18 U.S.C. § 3553.

### A. Criminal History

The government agrees with Probation that the defendant has a criminal history score of one and thus a criminal history category of I.

### B. Guidelines Calculations

The government agrees with Probation's total offense level calculation in the presentence report. The presentence report calculates the total offense level, including acceptance of responsibility, to be 29 (guideline range of 87 to 108 months).

### C. Section 3553(a) Factors

The federal sentencing statute, 18 U.S.C. § 3553, provides that, in addition to the Guidelines, a sentencing court should consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant, and; (2) the need for the sentence imposed– (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. With these factors in mind, the court should fashion a sentence that is sufficient, but not greater than necessary, to carry them out. *Id*.

In the government's view, the nature and circumstances of this crime place it at the serious end of the spectrum of hate crimes cases, making a prison sentence of 72 months appropriate. On the day of the assault, the defendant had no previous interaction with Z.F., as Z.F. simply boarded a public bus and kept to herself. Yet upon seeing Z.F., the defendant, filled with hate and armed with

a dangerous weapon, was lying in wait for a prime opportunity to assault Z.F. The repeated stabbing by the defendant to Z.F.'s head reflected her intent to seriously injure Z.F., confirmed by the defendant's comments after the assault. The defendant justified her vicious attack with her belief that China and the Chinese were a threat to the United States, referring to them as "the enemy" and "being at war." Her use of military terminology only strengthens the impression that she fully intended to physically harm Z.F. solely because she was of Chinese.

There are both aggravating and mitigating facts bearing on the defendant's history and characteristics. For one, her history of convictions shows a pattern of mental health problems that can manifest as outbursts of violent rage. Based on the competency hearing and the subsequent filings by both parties, the Court is well-aware the defendant's psychiatric history and substance abuse. There is no indication in the PSR, however, that her mental health diagnoses have caused or would cause feelings of racial animus of the kind that the defendant had expressed.

Moreover, the defendant's mental struggles are reflected and already factored into the parties' agreement that a custodial sentence should not exceed 72 months' imprisonment. This reduction is far below the 87-108 months the defendant could have faced if given a guideline sentence and the 121-151 months if convicted after trial. In the government's view, the defendant's history and characteristics provide no basis to sentence the defendant to anything lower than 72 months.

The seriousness of the crime is also reflected in the impact it had on the victim, Z.F., as expressed by her in her impact statement to the Court. (ECF No. 112). As Z.F. explains, the defendant's actions have had a profound impact on her life and daily activities. Z.F. noted that she is always on edge, fearing another attack. Although she is in therapy, Z.F. does not venture out at night and continues to suffer from nightmares, even years later after the attack. Furthermore, the defendant's actions have also had a distressing and chilling effect in the town of Bloomington and among its university students, as evidenced by the outpouring of concern expressed by members of the community for their future safety and their support for Z.F. (ECF No. 113). In the impact

statements from members of the community, several current Indiana University students expressed hesitancy or fear about riding the transit buses in Bloomington as a result of the Defendant's attack on Z.F. This has a significant impact on a university whose students rely on the transit bus.[2]

The statutorily enumerated purposes of sentencing also counsel in favor of a sentence of 72 months. First, there is a strong need generally to deter bias-motivated assaults, which have been on the rise nationally since 2020.[3] A significant sentence of incarceration will also send the message that racially motivated acts of violence are antithetical to the values espoused by most Indiana residents and will not be tolerated. Furthermore, given the defendant's use of a dangerous weapon and the injuries sustained by Z.F., a sentence of 72 months is in keeping with the range of sentences for bias-motivated assaults.[4] Finally, while the defendant has a First Amendment right to hold and voice bigoted views, there is a strong need to specifically deter her from violently attacking people based those views again in the future.

For reasons already discussed, the defendant's behavior raises grave concerns about possible danger to the public. The longer period of incapacitation provided by a high-end sentence would help ensure public safety.

Lastly, the presentencing report indicates that the defendant has a substantial need for treatment and rehabilitation. The defendant appears to have benefitted from counseling and psychiatric treatment during her period of federal supervision, and the government would support

---

[2] Indiana University 2021 Transportation Demand Management Report, 2021 Report: About Us: Transportation Demand Management: Indiana University
[3] "From Pain to Power: Asian American & Pacific Islander Activation in the Face of Hate," Stop AAPI Hate, 24-SAH-NationalSurveyReport-ExecutiveSummary-English-R3-digital.pdf (visited November 25, 2024)
[4] *United States v. Gomez*, 7:21-mj-00315-RCG, (Aug, 4, 2022 W.D.Tx) (defendant received 25 years prison for stabbing an Asian man, his son, and store employee); *United States v. Eubanks*, 3:23-cr-00076-MJN (S.D.Oh Dec. 6, 2023) (defendant sentenced to 20 years for committing several assaults, robberies, and a carjacking of Haitian immigrants); *United States v. Johnson*, 5:22-cr-00025-J (W.D.Okla. July 25, 2023) (defendant sentenced to 120 months for assaulting a Black man in a restaurant parking lot); *United States v. Lashley*, 5:22-cr-00027-JA-PRL (M.D.Fl. Jan. 25, 2023) (two brother-defendants sentenced to 60 and 36 months respectively for assaulting a Black man in a shopping parking lot); United *States v. Pierallini*, 3:23-cr-00088-TJC-MCR (M.D.Fl Apr. 24, 2024) (defendant sentenced to 60 months for threatening two Black women with a firearm); *United States v. Hudak*, 1:23-cr-00231-WO (M.D.N.C. May 2, 2024) (defendant sentenced to 41 months for shouting slurs and intimidating a Black and Hispanic man engaging in federally protected activities); *United States v. Laboy-Garcia*, 3:21-cr-00267-ADC, (D.P.R. Nov. 15, 2023) (three defendants sentenced to 33 months prison for shooting transgendered woman with a paintball gun); *United States v. Leahey*, 8:22-cr-00156-KKM-M_M (M.D.Fl Nov. 7, 2022) (defendant sentenced to 24 months for forcing a Black driver off the road).

including the continuation of treatment as a term of any period of supervised release.

IV.     **Conclusion**

For the reasons discussed in this memorandum, the government respectfully recommends that this Court sentence the defendant to a period of 72 months of imprisonment and three years of post-release supervision.

Respectfully submitted,

| | |
|---|---|
| ZACH A. MYERS | KRISTEN M. CLARKE |
| United States Attorney | Assistant Attorney General |
| Southern District of Indiana | Civil Rights Division |
| | |
| */s/ Peter Blackett* | */s/ Anita Channapati* |
| By: Peter Blackett | Anita Channapati |
| Assistant United States Attorney | Trial Attorney |
| 10 W Market St, Suite 2100 | 950 Pennsylvania Avenue, NW |
| Indianapolis, IN 46204 | Washington, DC 20530 |
| Tel. 317-226-6333 | Tel. (202) 353-1219 |
| peter.blackett@usdoj.gov | anita.channapati@usdoj.gov |

## CERTIFICATE OF SERVICE

    I hereby certify that on November 26, 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the applicable parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                  By:    /s/ Peter A. Blackett
                                               Peter A. Blackett
                                               Assistant United States Attorney